# Richmond

## Temple Overton Campbell v. Third District Committee of the Virginia State Bar.

March 2, 1942.

Record No. 2479.

Present, All the Justices.

The opinion states the case.

*Robert T. Winston,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, T. Gray Haddon, Commonwealth's Attorney,* and *Aubrey R. Bowles, Jr.,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This appeal brings under review a judgment rendered against T. O. Campbell, an attorney at law, by a three-judge tribunal acting under the provisions of section 3424 of the Code of Virginia.

On the 16th day of December, 1940, the Third District Committee of the Virginia State Bar, duly constituted under "The Rules for Integration of the Virginia State Bar," filed its petition verified by affidavit in the lower court, charging that T. O. Campbell, a licensed attorney at law, had been guilty of unlawful, dishonest, unworthy, corrupt and unprofessional conduct. The charges in the complaint were:

"1. That the appellant had Naomi M. Pagels, of Trenton, New Jersey, acting as a solicitor of legal business for him and divided fees with her, she not being a lawyer.

"2. That the appellant colluded with Naomi Pagels to represent non-residents of Virginia, obtaining invalid divorces for such non-residents in Hustings Court, Part II, of the

City of Richmond, Virginia, and with such non-residents, to perpetrate a fraud on said court.

"3. That the appellant acted as counsel for one William M. Campbell, of Trenton, New Jersey, in obtaining a divorce for said Wm. M. Campbell in Hustings Court, Part II, of the City of Richmond, Virginia, when the appellant knew, or should have known, that said William M. Campbell was a non-resident of the State of Virginia, and thus perpetrated a fraud on said court. The said suit was filed September 20, 1938.

"4. That the appellant acted as counsel for one Hazel Dixon, of Trenton, New Jersey, in obtaining a divorce in Hustings Court, Part II, of the City of Richmond, Virginia, when it plainly appeared to the appellant that she was not a bona fide resident of Virginia, in fraud of said court. The said suit was filed November 8, 1938.

"5. That the appellant acted as attorney for one Myrtice Sprinkle in 1930 in obtaining a divorce from her non-resident husband in said Hustings Court, Part II, Richmond, Va.; that he thereafter married Myrtice Sprinkle and lived with her until sometime during the year 1939; and that on August 19, 1939, the appellant filed a petition in the Circuit Court of the City of Richmond praying for the annulment of his said marriage on the ground that the divorce in which he had represented the said Myrtice Sprinkle as counsel was illegal, null and void, because the depositions taken therein were taken in contravention of statute, that is, thirty-nine days after the entry of the order of publication therein; that is, that he relied upon his own neglect as her former attorney to annul his subsequent marriage to the said Myrtice Sprinkle.

"6. That the appellant, at his hearing before said Committee, on October 20, 1939, voluntarily stated under oath that he had lived in adultery with Myrtice Sprinkle in the year 1929 and prior to his supposed marriage to her; that is to say, while he was representing her as her attorney before the said Hustings Court, Part II, in obtaining a divorce therein from her non-resident husband."

Defendant filed his answer denying each and every allegation set forth in the petition.

After hearing evidence, the court found the defendant guilty upon only two of the charges alleged in the petition; to-wit, the charge of fraud in the conduct of the William Campbell case and the charge of fraud in the conduct of the Myrtice Sprinkle case. The judgment of the court was that the license of the defendant to practice law be suspended for a period of ten years. This action of the court, for the reasons hereafter set forth, is assigned as error.

The proceeding brought by the District Committee was not brought for the purpose of inflicting punishment upon the defendant in case of his conviction but for the purpose of carrying into effect the injunction of a lawyer's oath of office that he will honestly demean himself in the practice of his profession. The right to practice law is not an inherent right, and even before a man or woman is granted a license it must appear that he or she is a person of high moral character. Since a lawyer must possess high moral character before he or she can obtain a license to practice law, so he or she must maintain a high moral character after obtaining a license, or else forfeit the privilege which has been bestowed by the State as a matter of grace. Though one may possess intellect, wealth and social standing, one should not be granted a license to practice law nor be permitted to exercise the privilege after obtaining a license, if lacking in character. As said by Mr. Justice Holt in *Norfolk, etc., Bar Ass'n v. Drewry*, 161 Va. 833, 172 S. E. 282: "It is want of character which is important." The good character of a lawyer may be likened unto the virtue of a woman. It is his chief jewel and when he loses it, he becomes a moral bankrupt. If he loses it by reason of his own misconduct, he has no right to complain of the punishment inflicted upon him.

This proceeding is not a criminal proceeding but a proceeding merely civil in its nature. It is not necessary, in order to justify the action of the court in finding the defendant guilty, to prove his guilt beyond a reasonable doubt.

We shall now enter upon a discussion of the assignments of error in the order made.

"The refusal to strike all specifications save that of solicitation."

This motion to strike is predicated upon the ground that section 3424 of the Code is unconstitutional in that it attempts to delegate legislative powers to the special court from whose judgment this appeal was taken. The contention is untenable. It is evident from the provisions of section 3424 of the Code that, by its enactment, the legislature merely intended to create a new tribunal with general jurisdiction to hear and determine disbarment proceedings, and did not intend to delegate to the tribunal any legislative powers. It is further contended that if the statute be held constitutional, it should be held to be invalid, for the reason that it is too vague and uncertain in its terms. In other words, it is argued that the statute should define the terms "malpractice," "unlawful," "dishonest," "unworthy," "corrupt" and "unprofessional."

In *Richmond Ass'n* v. *Bar Ass'n*, 167 Va. 327, 189 S. E. 153, it was contended that section 3422 of the Virginia Code prohibiting the practice of law by an unlicensed person was invalid because there was no legislative definition of the "practice of law" in the statute. This contention was rejected. Speaking for the court, Mr. Justice Eggleston said:

"It is, therefore, of no moment in the present discussion that Code, section 3422 (as amended by Acts 1922, chapter 389, section 1), which prohibits the practice of law by an unlicensed person, does not define 'the practice of law.'

"The precise argument advanced here—that the courts have no power to reach the unauthorized practice of law in the absence of a legislative definition of the term—was rejected in *Depew* v. *Wichita Ass'n of Credit Men*, 142 Kan. 403, 49 P. (2d) 1041, 1043.

"It might as well be argued that section 105 of the Virginia Constitution, and section 5975 of the Code, which provide that no judge of this State shall 'practice law' while in office, are unenforceable because neither the Constitution nor the Code defines the phrase.

"As was aptly said in *People* v. *Merchants' Protective Corp.*, 189 Cal. 531, 209 P. 363, 365: 'The phrase "practicing law," or its equivalent, "the practice of law," has long had a

sufficiently definite meaning throughout this country to be given a place in both constitutional and statutory law without further definition.'"

■ ■ There is nothing vague or indefinite about the terms employed in the statute. They are in common use and have a definite meaning. To charge that a defendant is guilty of malpractice is simply to charge that he is guilty of illegal or unethical practice. If he desires further information, he can call for a bill of particulars. In the case at bar the petition specifically sets forth the charges the defendant was called upon to meet.

There is no merit in this assignment.

■ The defendant complains of the action of the court in admitting the letter written by William Campbell to "C. O. Campbell." The letter was received by defendant and was but a link in the chain of evidence to establish the fact that defendant knew, or could by the exercise of reasonable diligence have known, that William Campbell was a non-resident of the State. Possessed of this information, defendant knew that the Hustings Court was without jurisdiction and he was guilty of perpetrating a fraud upon the court when he obtained the decree of divorce.

The action of the court in permitting the wife of defendant to testify in regard to the receipt of what is called the "Dixon Letter" is assigned as error. Since the court found the defendant not guilty on the charge of fraud in the Dixon case, the admissibility of this evidence loses its relevancy and it is unnecessary to discuss the assignment.

There are other assignments of error relating to the admission of alleged illegal evidence and rejection of alleged legal evidence. These assignments have been carefully considered and in our opinion are without merit.

It is finally contended that the judgment of suspension is erroneous, for the reason that it is without evidence to support it.

■ The judgment of suspension was entered against the defendant on two grounds: viz, that he was guilty of perpetrating a fraud upon the Hustings Court, Part II, of the city of Richmond, in his conduct of the cases of William M.

Campbell against Elizabeth H. Campbell and Myrtice Mae Sprinkle against William Sprinkle. In our opinion the charge of fraud in the prosecution of the William Campbell suit has been proven beyond a reasonable doubt by the following letter which defendant admits receiving:

> "198 Brunswick Avenue,
> Trenton, New Jersey.
> September 10, 1938.

"Mr. C. O. Campbell,
1211 Amherst Avenue,
Richmond, Virginia.

"Dear Sir:

"I am writing in reference to your recent letter to Mrs. Passo of Union Street in this city in answer to my inquiry regarding a divorce in your state. I telephoned your home this morning to make an appointment with you but learned that you would not return until the middle of the week. Would it be possible for you to see me on Sunday, September 18 or September 25. If you will write me and let me know the best possible time to see you, I will make my arrangements accordingly and will wire you verifying the appointment and the approximate time of my arrival. Sunday is the best day for me, but if that is not convenient, I will try to make some other arrangements.

"I have been separated since February, 1937, at which time I left my wife and child, although I continued to support them. Eleven months later my wife turned the boy over to me, saying she did not see why she should be tied down with a child while I was free to do as I pleased. I have had full custody of the child since that time, and she has made no effort to get him back, although she does visit him occasionally at the home where he is boarding. I learned indirectly that she obtained a position in New York State and left New Jersey a few weeks ago. I stopped supporting her after she obtained a position, which was last March, although, of course, I took care of the baby who is now a little over two years of age.

"I realized that the desertion was on my part but she gave up the baby of her own free will. My idea is to sue on adultery, if possible, because I know she is guilty of that offense. A few months ago I consulted a lawyer in this town and he would have started suit for me on adultery but for the fact that I could not name the hotel at which my wife and this man had stayed. He did say I seem to have a very good case but needed that one thing. My wife was pregnant through a man who had been going with a girl for several years. This girl came to me and told me about it, also that she could prove it to me, which she did. The man went to this old girl friend and asked her to help him out, which she did. She made an appointment with a certain midwife in town as he told her he had a young kid in trouble, and then at the appointed time she waited nearby to see who he brought to the midwife. After finding out it was my wife, she told me about it. The girl friend and I went to the midwife a week later and told the midwife that my wife was very sick and asked what she was going to do about it. She immediately said, 'Take me to her,' but I made some excuse about having to leave town that evening, so although doubtful, she gave me some pills to give my wife. I left and returned the next day to the midwife's home and told her my wife was all right, and there was nothing to worry about now. I later accused my wife and she admitted the whole thing and said they had been drinking. Naturally, I would prefer using these facts and suing on adultery, if possible, as this is the thing of which she is guilty. I realize this is very confidential and although Mrs. Passo said that she would write to you, I decided I would rather contact you direct. If you will let me know at your earliest convenience just when you will be able to see me, I will come at that time, if possible. I suggest that you wire me collect if you can see me this week-end. Otherwise, send a reply by air mail. Is there any particular information, such as dates, and so forth, that I will need? Kindly let me know so I can bring them along at the same time.

"Regarding the cost of such a case (that is, of course, if you will consider taking it) just what would be required? Usually, as I understand it, a certain amount is required to start and the balance before going to Court. If you will let me know your requirements before I leave Trenton, then I will be better prepared to do business immediately if the cost is not too high.

"Hoping to see you at your earliest possible convenience, preferably this week-end, I am,

"Yours very truly,

William Campbell."

[■■ As to the charge of fraud in the conduct in the Sprinkle case, the record is replete with evidence to sustain the charge. It is shown by the admission of defendant that at the time the defendant instituted the Sprinkle suit he was living in adultery with the complainant. It is, therefore, self-evident that he knew that the allegations in the bill that complainant "has always been a true, faithful and devoted wife" were absolutely false and that he was guilty of malpractice in concealing this fact from the court.

■■ It is further shown in the record that defendant was guilty of gross misconduct and unethical practice when he instituted a suit for annulment of his own marriage to Mrs. Sprinkle on the ground that he had committed an illegal act by taking depositions in the Sprinkle case within fifteen days, in contravention of section 5108 of the Code which prohibits the taking of depositions "until at least fifteen days shall have elapsed after said order of publication shall have been duly published as required by law."

It is assigned as cross-error by the Committee that the trial court erred in refusing to revoke the license of the defendant to practice law.

■■ Without expressing any opinion in regard to the power of the Supreme Court of Appeals to enter final judgment revoking the license of the defendant to practice law, it

is sufficient to say that the case has been tried by three eminent judges whose finding was eloquently expressed by Judge Wilson when he said:

"Gentlemen, the Court has given this matter very serious consideration; and I believe, if prayers are the thoughts which we have when we are alone, I can say the Court has given it prayerful consideration."

We refuse to disturb the judgment of the lower court and its judgment will be affirmed.

*Affirmed.*

HUDGINS and EGGLESTON, JJ., concurring.

We agree with the majority opinion in so far as it sustains the judgment of the lower court. But we are of opinion that the evidence clearly shows that the appellant is guilty of all of the charges preferred against him, and that because of this his license to practice law should be revoked. We are of the further opinion that this court has inherent power to enter a final judgment to this effect (*Norfolk, etc., Bar Ass'n* v. *Drewry*, 161 Va. 833, 836, 172 S. E. 282) and that it should do so.