## CIRCUIT COURT OF ARLINGTON COUNTY

In re Harry T. Friedlander

### August 20, 1969

By JUDGE ROBERT K. WOLTZ

This matter comes on as a result of the filing in this court of a verified complaint against Harry T. Friedlander, a member of the bar of this court, by Geraldine DeFoe under the provisions of § 54-74 of the Code. Subsection (1) of this section provides in part and so far as material to this matter that:

> if complaint, verified by affidavit, be made by any person to such court of any malpractice or of any unlawful or dishonest or unworthy or corrupt or unprofessional conduct on the part of any attorney . . . such court shall, if it deems the case a proper one for such action, issue a rule against such attorney . . . to show cause why his license to practice law shall not be revoked or suspended.

The healthy and necessary power of courts to discipline their officers, particularly attorneys practicing before them, is of ancient recognition and use. Perhaps the ultimate in this disciplinary power is the revocation of the attorney's license to practice, and independently of statute both English and American courts have the inherent power to suspend or annul the license of an attorney to practice in that court, though due to historical differences the English attorney has been licensed by the courts while generally in American jurisdictions, including Virginia, the attorney's license is obtained in accordance with legislative enactment and entitles him to practice in all courts of the licensing jurisdic-

tion. *Ex parte Fisher*, 33 Va. (6 Leigh) 619 (1835). The power to make suspension or revocation effective in all courts of a jurisdiction, rather than merely in a court in which an attorney may be practicing, must be confirmed by statute, *Legal Club v. Light*, 137 Va. 249, 19 S.E. 55 (1923), and such confirmation is found in § 54-74. The complaint having been filed, the case is at that preliminary stage in which the statute requires the court to determine whether "it deems the case a proper one" to issue a rule against the attorney to show cause why his license should not be revoked or suspended.

I take it that the court may and perhaps should at this stage consider the question of issuing a rule solely on the basis of the verified complaint with its exhibits, and that in doing so the proceeding is very roughly analogous to considering a bill or motion on demurrer. If the case is a proper one the rule would issue with further proceedings in accordance with the remaining provisions of the section; and if no rule issues the case would be terminated so far as this court is concerned.

The complaint is rather lengthy and detailed, presumably prepared by the complainant herself, and contains considerable extraneous matter.

In essence the complaint sets forth in chronological order as follows: On December 1, 1964, the complainant entered into a written lease with a corporation for an apartment in Arlington, the lease to be effective the same date, and the complainant with her mother took possession of the apartment. On March 16, 1965, a written notice signed by the defendant as attorney for two individuals was served on the complainant and her mother which required them to vacate and surrender possession of the premises within five days for reasons of alleged breaches (other than non-payment of rent) of the contract of lease. On March 24, 1965, complainant and mother received summons, presumably in unlawful detainer, sued out by the above two individuals and returnable to the Arlington County Court March 31, 1965. At that hearing (the only time during all the proceedings at which it clearly appears complainant was represented by counsel) motion for bill of particulars was granted, and it was subsequently filed by the defendant as attorney. Trial was had, and on April

2nd judgment was rendered for the plaintiffs. Complainant noted appeal and appeal bond was set April 8th, defendant attorney obtaining a writ of possession the same day. Subsequently a jury trial was had in the Circuit Court of Arlington County resulting in a verdict for the plaintiffs on which judgment was entered June 7th; and complainant indicating intention to appeal, bond was set with ten days allowed for posting thereof and on the tenth day complainant did post bond.

It is unclear exactly what appellate steps were taken, though the complaint alleges all steps regarding application for writ of error and supersedeas were timely taken and the record timely "removed from the jurisdiction of" the Circuit Court, nor is there any indication whether the case reached the Supreme Court of Appeals and if so what its disposition was. However, on September 10th, more than sixty days after final judgment, defendant attempted unsuccessfully to obtain from the Circuit Court the cash appeal bond. On October 15th, more than four months after final judgment, defendant attorney obtained from the Circuit Court a mandamus against the Clerk of that court requiring him to issue writ of possession, which was done, and on the following day, a Saturday, the sheriff or a deputy evicted complainant and mother from the premises. At some time--it is not clear when--defendant attorney filed three suits in the County Court, presumably these occurring successively during the pendency of the unlawful detainer proceeding, and apparently obtained judgment on these suits. February 4, 1966, defendant attorney sought from the Circuit Court the right to subject the cash bond in that court to garnishments pending in the County Court which was refused, and subsequently that month sought to dismiss the garnishments, but it is alleged that due to his refusal to serve complainant with copies of the praecipes for dismissal they were not dismissed until July 20, 1966, when he served copies thereof after complainant "filed a contempt of court action" against him. On July 20, 1966, the defendant brought action in the County Court against the complainant and her surety seeking the proceeds of the cash bond which had been posted in the Circuit Court, which effort failed. The complaint does not reveal whether the defendant ever satisfied his

clients' judgments for rent, either from the appeal bond or otherwise.

Except as perpetuated in this proceeding and as may be in the future, thus ends the saga of the complainant's vendetta with the defendant. It should never be the practice of the profession or the courts to discourage complaints of unethical conduct against attorneys when such complaints are founded on any reasonable degree of substance. Such substance is to be found in the terms "malpractice," "unlawful," "dishonest," and other like terms found in the statute, nor are these terms vague, *Campbell v. Third District Committee*, 179 Va. 244, 18 S.E.2d 883 (1942). Though disbarment proceedings are civil in nature and not criminal, *Maddy v. First District Committee*, 205 Va. 652, 139 S.E.2d 56 (1964), and are not for punishment of the attorney but for the protection of the public, *Norfolk and Portsmouth Bar Association v. Drewry*, 161 Va. 833, 172 S.E. 282 (1934), the mere filing of a complaint of unethical conduct against an attorney can, regardless of the outcome, do him serious injury. Thus where there is probable foundation for a complaint filed formally with the court it should not be reluctant to proceed therewith, but vigilant to see that the public interest is protected. Conversely there are compelling reasons why courts should not proceed further with complaints which do not show on their face some reasonable degree of probable cause to think that the statute has been violated.

Though the complaint does not say so specifically, its principal burden is that the defendant harassed the complainant through litigation. Canon 30 Justifiable and Unjustifiable Litigation of the *Canons of Professional Ethics* which form a portion of Part Six of the Rules of the Supreme Court of Appeals of Virginia (Rules for Integration of the Virginia State Bar) is in point and provides as follows:

> The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong. But otherwise it is his right, and, having accepted retainer, it becomes his duty

to insist upon the judgment of the Court as to the legal merits of his client's claim. His appearance in Court should be deemed as equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination.

Though the complaint does not claim that the attorney was pandering to any malice his clients may have felt toward her, Canon 15 on how far a lawyer may go in supporting a client's cause contains appropriate language:

In the judicial forum the client is entitled to the benefit of any and every remedy that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane . . .[1]

The complaint shows on its face that the attorney successfully prosecuted an unlawful detainer action against the complainant in the County Court which on appeal was after jury trial affirmed by the Circuit Court and efforts to have the latter court's judgment appealed to or reversed by the court of last resort failed. It further shows that the attorney in an effort to enforce this judgment successfully obtained a writ of mandamus against a third party (the complainant feeling aggrieved that she had had no notice of this proceeding to which she was not a party), and that he obtained three separate judgments in the County Court for rent due by the complainant. The favorable rulings of the courts in all these instances not only sustains the validity and justness of these litigations instituted

---

[1] See also Code of Professional Responsibility (Final Draft), DR 7-102(A)(1) and (2), of the American Bar Association Committee on Evaluation of Ethical Standards.

by the defendant, but by the same token excludes the possibility of their being legally unjustifiable.

The complaint further shows that the defendant made two unsuccessful efforts, one in the County Court and one in the Circuit Court, to obtain the proceeds of the appeal bond, and separate unsuccessful efforts to attach or garnish the bond money. It was the attorney's duty and responsibility to use all reasonable efforts to enforce the judgments of his clients, and the mere fact that the courts did not agree with the legal procedures employed by him does not by itself show that this subsidiary litigation was unjustifiable in nature or for the purpose of harassment. In passing, it is hardly the right of the complainant who had failed to pay three valid judgments for rent to complain of the defendant's efforts to collect on them through judicial proceedings; and it scarcely lies in her mouth to say that in the face of her intransigence he transgressed the bounds of professional ethics in taking vigorous legal action to have her evicted from premises seven months and one day after he had had her served with valid notice to vacate them. Whether the attorney had toward the complainant a strong animosity, justified or unjustified, and whether it antedated or coincided with litigation over the apartment, is beside the point. The ends he sought to promote on behalf of his clients and the means he employed to obtain them were both legally proper. That he may have been actuated in slight or large degree by any personal dislike of the complainant in this case is not a matter involving professional ethics.

The complaint bears the indelible imprint of great personal hostility toward the defendant and of the frustrations of a disappointed litigant. It shows a failure--not uncommon amongst laymen--to grasp the principles and purposes of the adversary system of justice, and is replete with misapprehensions of procedural and substantive law. To detail the foregoing would be both exhausting and unprofitable; the complaint speaks sufficiently for itself in these respects. It is enough to say that while one or more of these factors may have generated the complaint they are insufficient to validate it for the purpose of showing probable cause against the defendant.

For the reasons stated above the case is not deemed one proper for the issuance of a rule against Harry T. Friedlander to show cause why his license to practice law should not be revoked or suspended, and the complaint is dismissed.

It is perhaps unusual to render a written opinion or such a lengthy one on the preliminary consideration of a matter such as this. However, being mindful of the vital importance of legal ethics to the courts, the profession, and the public, and having expended a great deal of time in meticulous examination of the complaint and review of the law, it seemed more appropriate to the ends of justice to hand down this considered written opinion than merely to enter an order of dismissal without indicating the reasons therefor.