## Richmond

TENTH DISTRICT COMMITTEE OF THE VIRGINIA STATE BAR v. NOR-
MAN BAUM.

January 15, 1973.

Record No. 7987.

Present, All the Justices.

*T. J. Markow*, Assistant Attorney General (*Andrew P. Miller*, Attorney General, on brief), for plaintiff in error.

*James M. Thomson*, for defendant in error.

HARRISON, J., delivered the opinion of the court.

The Tenth District Committee of the Virginia State Bar filed a complaint in the Corporation Court of the City of Alexandria charging Norman Baum, an attorney, with a violation of Canon 27 of the Rules for the Integration of the Virginia State Bar. This Canon concerns "Advertising, Direct or Indirect" by an attorney. The Committee alleged:

"That during the years 1966, 1967, 1968, and 1969, Norman Baum did indirectly advertise for professional employment by causing or permitting a listing of ficticious [*sic*] persons or laymen, to-wit: Albert Aaron and David K. Zynch, at his address and with his telephone number in the yellow pages classified directory

of the Chesapeake and Potomac Telephone Company of Virginia published for the Northern Virginia area including the City of Alexandria."

Pursuant to the complaint, the court issued a rule against Baum ordering him to show cause why his license to practice law should not be revoked. Following a hearing before a special three-judge Corporation Court of the City of Alexandria the court concluded there was not sufficient evidence adduced to establish the charges preferred against Baum. The Committee appeals, as of right, under Code § 54-74 (5).

Baum and Stanley Hirsch are law partners with offices located in the City of Alexandria. During the years 1967-70 there appeared under the listing for "Lawyers" in the classified section of the Virginia Suburban and Washington Metropolitan Area telephone directory the names Albert Aaron and David K. Zynch. These names were the first and last names in that section, and each was listed as having the same address and telephone number as that of Baum. Neither Aaron nor Zynch has ever been licensed to practice law in Virginia and neither was associated with Baum.

The Committee contends that Baum caused the listing of Aaron and Zynch in the directory, or acquiesced in such listing, for the purpose of soliciting business. It reasons that because the name Aaron would be the first name to be listed under "Lawyers" and Zynch would be the last name so listed, their strategic location in the directory would result in telephone calls or personal visits to the office of Baum and his associates by persons who were not acquainted with any particular attorney and who were looking in a telephone directory for guidance.

Aaron's name first appeared in 1964 in the white and yellow pages of the telephone directory carrying the same address and telephone number as Baum. The record indicates that in the spring of 1967, at a time contemporaneous with a move by Baum into new law office quarters, a telephoned request was made to the C. & P. Telephone Company that it drop the Aaron listing. However, within two months another call was made to the Company requesting that it reinsert the listing under Baum's new address and telephone number. The record is silent as to who made the request to drop or reinsert the listing. It was done about the same time that the name David K. Zynch was added to the directory. This name was listed

last under the classified ad for "Lawyers" and it also carried Baum's new address and telephone number.

A representative of the telephone company testified that during the years 1964-70 the directory listings were subscribed to and paid for by Baum. No claim for a refund of payments has ever been made for the Aaron and Zynch listings. It is undisputed that Baum supervised the payment of the office telephone bills, and that the cost of each listing added approximately $1.75 a month to his telephone bill. Baum's monthly charges for telephone service approximated $225 and included directory advertising.

Baum and Hirsch testified that they had never known a David K. Zynch and had no knowledge of him or how or under what circumstances his name appeared in the directory.

With reference to Aaron, Hirsch said that about 1963 he was introduced to him by an associate, Solomon Par. Hirsch took part in or overheard a conversation between Par, Baum and Aaron and said that thereafter Baum indicated to him that Aaron had indicated an interest in having a telephone listing at their office. He understood that Aaron was originally from New York, was a member of the D. C. Bar and had completed his requirements for admission to the Virginia Bar. Hirsch further understood that although Aaron was going to leave the area he planned to return and that possibly at that time he would have a discussion with them regarding an association with their office. With this background Hirsch testified he agreed that Aaron have a telephone listing in the office. He admitted that Aaron was not employed or paid by Baum, had no association in any cases with Baum and said he had not seen Aaron since 1963.

Hirsch said that sometime in December, 1969 a telephone call was received in the office for Aaron and that Baum asked him if he was aware that Aaron was back in the area. He said that when one of their secretaries checked the yellow pages and found that Aaron was listed therein she was directed to call the telephone company and have the name removed. His testimony was that this verbal request was made to the telephone company in 1969 but that it was not complied with by the Company.

The testimony of Baum was substantially the same as that of his partner Hirsch. He stated that in the early part of 1963 Solomon Par introduced him to Aaron. Baum understood that Aaron was a lawyer in the District of Columbia who was handling a legal matter in Alexandria. He further said that Aaron was interested in doing

title work and wanted to have a Virginia office so that when he came back out of the service he would "have a place to hang his hat". Baum agreed that Aaron's name be listed under his address and telephone number. He stated that Aaron's name was listed with his consent prior to 1967, but that he neither directed nor authorized Aaron's name to be relisted after it was delisted for a period in 1967. He said he had no knowledge of the Aaron relisting until he was so advised by one of the secretaries in December, 1969, at which time several telephone calls came into the office for Aaron. He further testified that so far as he knew his office received no phone calls for Zynch until the first of 1970 and at a time which coincided with the investigation made by the Committee.

Frank D. Swart, an attorney, made the investigation as a member of the Tenth District Committee and pursuant to its direction. Swart testified that the complaint against Baum was received in February, 1970 and that on February 24, 1970 he went to Baum's office before Baum had been notified that the matter was under investigation. Swart said that when he entered the office he asked if he could see Mr. Albert Aaron. He was told by the secretary, Mrs. Gloria Darley, that "Mr. Aaron was on vacation for about a month, would be away for about a month".

Swart then asked for Mr. David Zynch and he said "she told me the same thing". At that time Swart identified himself by name and position and advised her that he was a member of the Tenth District Committee. He was not certain that she knew what the Committee was. When he asked to see the licenses for Aaron and Zynch, Mrs. Darley told him "he had better talk to Mr. Baum". She then told him that Baum was not in and that it was doubtful if he would be back that afternoon and if so it would not be for some time. He further said that when he asked Mrs. Darley if she had ever seen Aaron or Zynch she evaded the question and said he had better see Mr. Baum. When he repeated the question for the third time she acknowledged to him that she had never seen either Aaron or Zynch.

Several employees of Baum testified. Davita Klein denied ever having had a conversation with Julia G. Owen about David K. Zynch, or discussing with her a conspiracy in the Baum office to use the Zynch name to obtain a last name listing in the telephone book. She said that she had never heard Aaron's or Zynch's name mentioned prior to April 28, 1970 when the Committee had its hearing.

Gloria Darley testified that the first day she had ever been in the

Baum office alone was the day Mr. Swart called. Her testimony was vague and somewhat guarded. She admitted that she told Swart that she had never seen Aaron or Zynch. She stated that in December, 1969 she overheard a conversation between Baum and Mrs. Mary Poole, another employee in the office, regarding the Aaron telephone listing and believed she had heard Mrs. Poole call the telephone company to have the listing taken out. She also recalled a conversation regarding the Zynch listing in 1970. When asked if it was a fair inference to say that she was stalling Mr. Swart off until Baum could handle the matter personally, she responded "probably so because I really did not know anything about it myself because I had not been there that long".

Thomas A. Mickler testified that he met Aaron on one occasion when he was in the company of Solomon Par and that this occurred in the record room of the Corporation Court of Alexandria.

A number of witnesses were introduced to establish the good reputation of Baum.

The Committee's principal witness to prove its charges was Mrs. Julia G. Owen, who had been employed as personal secretary for Baum from March, 1966 to October, 1968, at which time she resigned. Mrs. Owen testified that within a month after she went to work she heard the name Albert Aaron mentioned at which time Baum told her "that if calls should be received for Mr. Aaron that we were to say that he was out of town or away and could possibly he or Mr. Hirsch help them". She said that she never saw Mr. Aaron but that she estimated that more than 20 calls came in for him during the 2 1/2 year period she worked for Baum. She further testified that the name David K. Zynch was first mentioned to her by Mrs. Davita Klein, who told her that they had decided on a name to go in the telephone book under "Lawyers" at the end of the alphabet and that "it would be Zynch, Z-y-n-c-h, and that was about as far down as you could go. That would be the last name". Mrs. Klein denied having such a conversation with Mrs. Owen.

Mrs. Owen stated that she had answered the phone when requests were made to talk to Mr. Zynch and that "I just said that he wasn't there; he was away or out of town. I don't know exactly what I told them, but he was not there". She also stated that she had talked to Mr. Baum with reference to Zynch but had never seen him.

It is the contention of Baum that the complaint which was the basis of the Committee's hearing was initiated by Julia G. Owen and that this act and her subsequent testimony were actuated by ill will

which she bore her former employer. Baum testified that the occasion for Mrs. Owen leaving his firm was "that she borrowed money and never came back". He stated that from the inception of her employment she was constantly obtaining advances from him and others in the office and that when she failed to show up for several days after obtaining a loan from him she was replaced. He said she was unhappy with his decision and observed that "nobody else could do her work but her and she did not think Mrs. Poole could". Baum obtained a judgment against Mrs. Owen for the money she owed him and issued a garnishment thereon. The amount of the judgment, $338.50, was apparently paid by the firm with which Mrs. Owen was then working.

Appellee alleges that the credibility of Mrs. Owen was destroyed by the contradictions found in her testimony before the Committee and that given before the court. He alleges that Mrs. Owen changed and strengthened her testimony at the trial. He points out that before the Committee, and after testifying that she had heard the names Aaron and Zynch mentioned while she was working for Baum, she was asked to "tell us in what connection you heard them mentioned" and responded: "I just heard that Mr. Aaron had been the friend of one of our old title examiners." When questioned before the Committee and asked if she had ever talked to Baum or Hirsch about Aaron and Zynch she replied: "I may have mentioned one of the two. I don't remember." She was asked whether Baum or Hirsch had even mentioned Aaron or Zynch to her and responded: "Mr. Aaron, I think. Maybe it was mentioned." When questioned by whom the mention was made, she replied: "I think maybe Mr. Baum would have mentioned it. I don't remember. Mr. Hirsch may have. I don't really remember, sir."

The Attorney General argues that Baum's guilt has been established by clear proof. He says that the testimony offered by Baum is contradictory and taxes credulity. He points to the fact that neither Aaron nor Zynch has ever been licensed to practice law in Virginia; the casual manner in which Aaron's listing first appeared in the telephone directory; the complete mystery that surrounds the listing of Zynch and the lack of evidence that any such person exists; the coincidence of the Zynch listing, the reinsertion of the Aaron listing and the move of Baum and Hirsch into new offices; the improbability that the names of Aaron and Zynch were inserted in the directory by Mrs. Owen, or by anyone, without the knowledge and consent of Baum; the unquestioned payment of telephone bills for the listings

over a period of years, and the fact that no request for refund has been made; the fact that the Zynch listing and the Aaron relisting occurred prior to the events which precipitated the resignation of Mrs. Owen and at a time when her relationship with Baum was not strained and she had no reason to embarrass Baum; the responses given Swart and the evasive answers he received from a secretary in Baum's office when he made his investigation as to the listing of Aaron and Zynch and their connection with Baum's office; and the vague and unsatisfactory explanations offered by Baum and his witnesses of the events surrounding the listings. The Attorney General concluded: "It is only when one attempts an alternate explanation for the listings that one realizes the preposterousness of any inference other than those embodied in the charges by the Committee."

The logic of the Attorney General's argument is inescapable. There is no evidence that the requests for the listings of Aaron and Zynch were made by either man or originated from any source other than Baum's office. While there was an individual named Aaron, he has not been heard from since 1963. Zynch is apparently a fictitious character. The original listing of Aaron under Baum's address and telephone number was improper, for Aaron was not then and never has been a member of the Virginia Bar. The intimation that Aaron and Zynch were listed by Mrs. Owen to embarrass Baum is without merit. At the time of Aaron's original listing Mrs. Owen was not in Baum's office, and at the time of Aaron's relisting and the Zynch listing no friction had developed between Mrs. Owen and Baum and no reason has been suggested why she would have then been desirous of embarrassing her employer.

Conceding that Mrs. Owen was more positive in her testimony before the court than she was at the hearing before the Tenth District Committee, her testimony is still consistent with other facts and circumstances in the case. The most significant evidence was given by Mr. Swart. His testimony is uncontradicted that when he visited Baum's office on February 24, 1970 and asked to see both Aaron and Zynch, his request provoked no surprise or unusual reaction. On the contrary, and consistent with the evidence of Mrs. Owen as to how such inquiries for Aaron and Zynch were to be handled by the office employees, Mrs. Darley responded that Aaron and Zynch were "on vacation for about a month" and "could someone else help".

The principles which control our decision were recently restated by us in *Seventh District Committee* v. *Gunter*, 212 Va. 278, 284, 183 S. E. 2d 713, 717 (1971), where we said:

"A proceeding to discipline an attorney is not a criminal proceeding and the purpose is not to punish him but to protect the public. It is a special proceeding, civil and disciplinary in nature, and of a summary character. It is in the nature of an inquest or inquiry as to the conduct of the attorney. Being an informal proceeding it is only necessary that the attorney be informed of the nature of the charge preferred against him and be given an opportunity to answer. While liberality of construction is the rule, reasonable strictness of proof is necessary before guilt should be held to have been established—not proof beyond a reasonable doubt, but clear proof. *See Norfolk Bar Ass'n* v. *Drewry*, 161 Va. 833, 172 S. E. 282 (1934); *Campbell* v. *Third Dist. Comm.*, 179 Va. 244, 18 S. E. 2d 883 (1942); *Maddy* v. *District Committee*, 205 Va. 652, 139 S. E. 2d 56 (1964)."

We are not unmindful of the judgment of the trial court and the presumption of correctness that attaches to it. However, we are of opinion that the evidence and exhibits clearly and convincingly support the conclusion that Zynch's name was listed in the telephone directory, and Aaron's name continued in the directory after 1967, for the purposes alleged in the complaint filed against Baum by the Committee.

Accordingly, the order of the lower court dismissing the complaint filed by the Committee against Baum is reversed. The case is remanded and reinstated on the docket of the court below with direction that the trial court reconvene and take such disciplinary action against Baum as it may deem appropriate and consistent with the views herein expressed.

*Reversed and remanded.*