375 So.2d 1350 (1979)
LOUISIANA STATE BAR ASSOCIATION
v.
Alfred E. MITCHELL.
No. 60922.
Supreme Court of Louisiana.
October 8, 1979.
Harold J. Lamy, New Orleans, Chairman, Roland J. Achee, Shreveport, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Edgar H. Lancaster, Jr., Tallulah, Alfred S. Landry, New Iberia, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for Louisiana State Bar Ass'n, Committee on Professional Responsibility, petitioner.
Albert F. Richard, Plaquemine, for respondent.
MARCUS, Justice:
Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Alfred E. Mitchell, a member of said association. The committee had previously conducted an investigation of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of two separate specifications of misconduct was given to respondent in a communication from the committee dated April 7, 1977.
Specification No. 1 alleged:

*1351 By letter dated December 9, 1975, from Leonard K. Knapp, Jr., Attorney at Law, you received a check in the amount of $2,150.34, which represented attorney fees, costs and interest on the principal which belonged to the plaintiff from the matter entitled `Ethel Floyd, et al vs. Roy J. Fertitta, et al.' Mr. Knapp instructed you to withhold from that check your costs and attorney fees and then distribute the remainder equally to your fourteen clients which said distribution would be of the interest collected on the judgment. Thereafter, you did comingle said funds with your own and convert said funds to your own use. Despite numerous demands from your client, Ethel G. Floyd, and this Committee you have failed, neglected and refused to provide a full and complete accounting to your clients or to pay over to your clients the sums due all in violation of Disciplinary Rule 1-102 and 9-102 of the Code of Professional Responsibility of this Association.[1]
Specification No. 2 alleged:
You accepted a fee of $750.00 from Mr. Cressie Woodall for the purpose of representing him in an effort to obtain a pardon from the State of Louisiana or a parole from the Department of Corrections of the State of Louisiana relative to the conviction of a crime for which he is presently serving a sentence in the Louisiana State Penitentiary. At the time you received the fee herein stated you were an assistant District Attorney for the 18th Judicial District and therefore prohibited by law from representing anyone in a criminal matter. Furthermore, you rendered no services for the fee paid and you have failed, neglected and refused to refund to Mr. Woodall the fee paid you, all in violation of Disciplinary Rule 1-102 of the Code of Professional Responsibility of this Association.[2]
A formal investigatory hearing was held on May 16, 1977, as provided by article 15, section 3(b) of the articles of incorporation. Respondent was present and represented by counsel at the hearing and testified in his own behalf.
Based on the evidence adduced at the formal investigatory hearing, the committee, by a unanimous vote, was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as *1352 to evidence a lack of fitness for the practice of law; that, specifically, respondent was guilty of the misconduct set forth in Specifications Nos. 1 and 2. On October 28, 1977, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. Thereafter, on motion by the committee, we appointed Leon Gary, Jr. commissioner to take evidence and to report to this court his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, art. 15, § 6(b) and (d).
A hearing before the commissioner was conducted on November 28, 1978. The committee introduced in evidence, without objection, the entire record of the earlier investigatory hearing. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended disbarment as the appropriate disciplinary action. The committee filed its concurrence in the commissioner's findings of fact and conclusions of law and submitted the matter for this court's determination. An exception was filed by respondent to the commissioner's report. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Levy, 292 So.2d 492 (La.1974).

SPECIFICATION NO. 1
The charges of commingling and conversion of funds concern interest paid on a judgment granted in favor of respondent's clients. Respondent's initial involvement in the case was at the request of Emmitt J. Douglas, president of the Louisiana State Conference of the NAACP branches. Douglas contacted respondent on May 17, 1969, regarding eighteen NAACP members who had been arrested and were being held without bond in jail in Leesville, Louisiana. Respondent immediately went to Leesville, and the group's release was effected the following day. Douglas testified that respondent had acted as counsel for the NAACP without compensation prior to his work in Leesville and that there had been no mention of fees on the occasion. Respondent never received any payment from the NAACP for his efforts in securing the release of its eighteen members.
Respondent went on to represent fourteen members of the arrested group as plaintiffs in a civil rights action filed against the mayor of Leesville in the federal district court after he had successfully obtained the dismissal of the criminal charges against them. The action resulted in a judgment in favor of the plaintiffs and against the mayor in the sum of $500 for each plaintiff plus $1,000 attorney fees with interest at the rate of eight percent until paid.
As a result of no execution of the judgment, Mrs. Ethel Floyd, one of the plaintiffs, contacted the trial judge expressing concern over the delay. The judge referred Mrs. Floyd to Leonard K. Knapp, Jr., a Lake Charles attorney, for assistance in collecting the judgment. While there is a dispute as to the fee arrangement between Knapp and respondent, it seems clear that it was agreed that Knapp would charge forty dollars per hour not to exceed $500. Knapp was able to collect the judgment. After deducting his half of the attorney fees ($500) plus interest thereon ($122.30) and $182.35 in costs from the plaintiffs' share of the interest in addition to $316.17 in costs paid by the defendant, he transmitted to respondent fourteen checks in the amount of $500 each for each of the plaintiffs and a check for $2,150.34 representing respondent's share of the attorney fees ($500), interest thereon ($122.30), his costs ($98.16) and the balance of the accrued interest on the judgment. Respondent turned plaintiffs' checks over to Douglas and those checks were received by plaintiffs. The remaining check of $2,150.34 was *1353 deposited by respondent in his personal account.
Mrs. Floyd filed a complaint with the bar association in May 1976 reporting that neither she nor her husband, who was also a plaintiff, had ever received a prorata share of the interest on the judgment. None of the other plaintiffs filed a complaint concerning the payment of interest, although one of them, Dennis Ware, did testify at the investigatory hearing that he had not received his share of the interest. Respondent, after being notified of the complaint, mailed two checks to Mr. and Mrs. Floyd in the amount of $71.89 each. The checks were sent unaccompanied by any explanation, but respondent testified that the payment represented interest on the judgment. At oral argument before this court, counsel for respondent represented that each of the plaintiffs had received his prorata share of the interest. Respondent subsequently submitted to the bar association a copy of a cashier's check in the amount of $1,120, dated November 9, 1978, payable to Mr. Florce Floyd. The check was accompanied by an affidavit to the effect that the check was delivered to Mr. Floyd as president of the Lake Charles chapter of the NAACP for prorata disbursement of interest on the judgment to the remaining plaintiffs who were all board members of said chapter.
Respondent testified that he had performed extensive services and incurred substantial expenses in connection with his representation of the Leesville arrestees and their subsequent suit for which he had not been paid and that the value of these services and the amount of his expenses exceed the interest due to the plaintiffs on the judgment. However, he admits that he has never billed his clients for these services and expenses. The record fully supports that respondent did expend considerable time and money in connection with this matter for which he was never compensated. Moreover, it also supports his contention that the value of these services and the amount of his expenses exceed the interest due to the plaintiffs on the judgment. Nonetheless, respondent had a duty to account to his clients for the entire recovery under the judgment, including interest, whether or not he had a claim against them for services and expenses exceeding the amount due them.
The charge of commingling of funds is, of course, dependent upon the charge of conversion, I. e., if respondent was entitled to the interest money in payment of his fee and expenses, he did not commingle his clients' money with his own by depositing the check in his personal account. Under the circumstances, we find, at most, only technical violations of disciplinary rules 1-102 and 9-102. Moreover, we note as a mitigating factor that respondent paid $1,120, representing interest on the judgment, to Mr. Floyd for prorata distribution to the remaining plaintiffs.

SPECIFICATION NO. 2
The commissioner found that respondent's acceptance of a $750 fee in March 1976 to represent Cressie Woodall, an inmate of the state penitentiary, at a time when he was serving as an assistant district attorney constituted the practice of criminal law prohibited by state law. He further found that respondent provided no services for said fee in violation of disciplinary rule 1-102.
Mrs. Clara Towns Williams, Woodall's sister, retained respondent as attorney for her brother who was incarcerated in the state penitentiary. Mrs. Williams testified that at their first meeting respondent promised that he "could get him [Woodall] out" of prison for $750. Mrs. Williams filed a complaint with the bar association by letter dated August 12, 1976, in which she asked for assistance in recovering the fee.
The testimony of respondent and Leo Johnson, who was present at the initial consultation, indicated that respondent merely advised Mrs. Williams that he would look into her claim that some of the jurors had voted to acquit her brother of the crime for which he was serving time at the state penitentiary. Respondent testified that, since the only work performed by him was *1354 an investigation into this claim for the purpose of possibly bringing a civil action for damages for wrongful incarceration, he considered his work civil in nature rather than criminal. The $750 fee was to cover his cost in seeking out and interviewing the persons who served as jurors in the case. The investigation by respondent included the procurement of Woodall's "rap sheet" and interviews with two jurors. Respondent visited Woodall at the penitentiary on two occasions: the first visit occurred after Woodall had been denied parole at a parole hearing on August 18, 1976, and the second visit took place in May 1977.
Although Woodall testified that he expected respondent to represent him at the parole hearing, the evidence is clear that respondent took no action on behalf of Woodall in this matter. Woodall was unsuccessful in reaching respondent by phone on the day prior to the parole hearing. Woodall testified that he became dissatisfied with respondent when respondent did not appear at the parole hearing. It should be noted in this connection that the complaint filed by Mrs. Williams with the bar association was dated and received on August 12, 1976, which was some six days prior to the parole hearing on August 18, 1976.
We find that the evidence supports a conclusion that respondent undertook a preliminary investigation directed toward a possible civil action for damages based on his client's alleged wrongful incarceration. We are unable to say that respondent's representation of Woodall was criminal in nature, absent other evidence, simply because Woodall was incarcerated at the time. Admittedly, it might have been unwise for respondent to have accepted such representation while serving as an assistant district attorney because of the fine line existing between the practice of criminal and civil law under the present circumstances. Moreover, we find that the record reveals that respondent did take some action on behalf of his client. We are unable to say that the fee charged was clearly excessive. In any event, we disagree with the commissioner's finding that respondent performed no legal services for the fee received.

CONCLUSION
We find, at most, only technical violations of disciplinary rules 1-102 and 9-102 under Specification No. 1 and no violation of disciplinary rule 1-102 under Specification No. 2 except for a possible appearance of impropriety. As a consequence, we conclude that an official public reprimand would be the appropriate disciplinary action for respondent's conduct in these matters.

DECREE
For the reasons assigned, it is ordered that Alfred E. Mitchell be and he is hereby publicly reprimanded for his conduct in these matters. Respondent is to bear all costs of these proceedings.
NOTES
[1] DR 1-102 Misconduct.

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
[2] See footnote 1 above.