DISCIPLINARY PROCEEDINGS
BAILES, Justice Pro Tem.*
Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Ronald L. Causey, a member of said association. Two separate specifications of misconduct have been alleged.[1] Specification No. 2 provides:
That in 1979, you did represent Joseph Dominick, Heather Dominick and Diana Efferson (Dominick), for personal injuries and damages arising from an accident that occurred on May 1, 1978. And that, prior to your representation of the aforesaid clients, they were represented by Attorney Ronald Macaluso until April 10, 1979.
Further, your clients agreed, and you guaranteed, that Ronald Macaluso was to receive ⅝ of any attorneys fees, plus the sum of $123.00 for costs. And that on December 4, 1979, the case involving the aforesaid clients was settled for the sum of $17,500.00 resulting in an attorneys fee of approximately $5,800.00.
Further, despite repeated demands from your clients and Mr. Macaluso, you have failed, refused and neglected to pay the guaranteed fee to Mr. Macaluso, rendering your clients liable for said sums. And that you attempted to deceive Mr. Maca-luso as to the full amount of settlement and that you have converted to your own *126 use the fees in question all in violation of Disciplinary Rules 1-102 and 9-102.[2]
As provided by article 15, section 3(b) of the articles of incorporation of the Association, a formal investigatory hearing was held by the Committee on July 9, 1981. Although Mr. Causey had been notified by letter dated May 20, 1981 of the hearing and the specification of alleged misconduct, he neither appeared nor was represented by counsel.
Based on the evidence adduced at the formal investigatory hearing, the Committee, by a majority vote, was of the opinion that Mr. Causey was guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of fitness for the practice of law; that, specifically, Mr. Causey was guilty of the misconduct set forth in Specification No. 2. On August 6, 1982, the Committee filed a petition in this court for disciplinary action against Mr. Causey under the provisions of article 15, section 4(c) of the articles of incorporation. Mr. Cau-sey’s answer to the petition, which was not filed until January 4, 1983, denied any wrongdoing. On motion by the Committee, we appointed Paul Marks, Jr. commissioner to take evidence and to report to this court his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, art. 15, § 6(b) and (d).
A hearing before the commissioner was conducted on January 4, 1983. Mr. Causey appeared at this hearing and testified in his own behalf. The Committee introduced in evidence, without objection, the entire record of the Committee’s formal investigatory hearing. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended suspension as the appropriate disciplinary action. The Committee filed its concurrence in the commissioner’s findings of fact and conclusions of law and submitted the matter for this court’s determination. In its brief, the Committee recommended a suspension of one year. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that Mr. Causey was guilty of the specification of alleged misconduct. Louisiana State Bar Association v. Mitchell, 375 So.2d 1350 (La.1979). We hold that this burden has not been met.
*127 The allegation of misconduct stems from the representation of clients in an action for personal injuries resulting from an automobile accident. After suit was filed but prior to settlement negotiations, Mr. Causey was contacted by the clients to replace Mr. Ma-ealuso, the original attorney of record. Mr. Causey agreed to take the case and subsequently entered into a written agreement with Mr. Maealuso whereby each attorney would receive one-half of the one-third contingency fee plus Mr. Maealuso would be reimbursed $123 for costs. This fee-splitting arrangement was approved by the clients.
In September or October of 1979, Mr. Causey contacted Mr. Maealuso by telephone to discuss their fee agreement. The testimony as to what was said during this conversation is conflicting. According to Mr. Maealuso, Mr. Causey wanted him to reduce his fee because Mr. Causey wanted to reduce the one-third contingency so that the clients would receive from the settlement what he felt was appropriate. Mr. Maealuso agreed to accept $500 as a fee plus $123 as costs. Mr. Maealuso also testified that at the time he agreed to reduce his fee, Mr. Causey indicated that the approximate value of the settlement was $5,000 to $7,000. Mr. Causey’s account of the conversation is very different. He testified that he did not mention a settlement figure; according to Mr. Causey, no figures had been discussed with the opposing party at the time of his conversation with Mr. Maea-luso. He maintains that he asked Mr. Ma-ealuso to reduce his fee because he felt that his office had done the bulk of the work. Whether Mr. Causey mentioned an approximate settlement figure, it is clear that an oral agreement was reached in which Mr. Maealuso would receive $500 as a fee plus $123 for costs.
In December of 1979, a settlement was reached whereby the clients would be paid $17,500. The insurance company drafts were issued to the clients and Mr. Maealuso as joint payees. Mr. Macaluso’s name was erroneously placed on the drafts because he had been the original attorney and his name was still in the insurance company’s file. Mr. Causey turned down an offer from the counsel for the insurance company to have the drafts reissued to the clients and Mr. Causey as joint payees because, as Mr. Cau-sey testified, he and Mr. Maealuso had an agreement on splitting fees and he could easily obtain Mr. Macaluso’s endorsement on the draft. Mr. Maealuso testified that he was surprised when he saw the $17,500 drafts because he had anticipated a settlement of $5,000 to $7,000. He stated that he nevertheless endorsed the drafts and left word with Mr. Causey’s secretary for Mr. Causey to contact him concerning this matter. Contrary to this version, Mr. Causey’s associate, Mr. McGinsey, testified that Mr. Maealuso endorsed the drafts in a matter of fact manner and then merely asked when is Mr. Causey “going to send me my $500?”
The drafts were deposited by Mr. Causey into a separate clients’ account. Approximately two weeks later, in mid-December 1979 when the drafts cleared, Mr. Causey paid the clients their two-thirds share of the settlement. Mr. Causey testified that he did not tender a check to Mr. Maealuso at that time because he did not consider it an urgent matter and because it was the holiday season. He stated that he attempted to call Mr. Maealuso about delivering the check in person but was unable to make contact.
Approximately one month after the drafts cleared, Mr. Causey received a letter from Mr. Maealuso in which Mr. Maealuso expressed his dismay about the delay in payment. He stated that the oral agreement was cancelled and demanded fifty percent of the contingency fee as per their written agreement. Mr. Causey testified that no payments were made after the receipt of this letter because he believed that he owed Mr. Maealuso only $623 and not almost $3,000 as demanded. In a letter to the Committee dated January 18, 1982, and in his testimony at the commissioner’s hearing, Mr. Causey acknowledged that he owes Mr. Maealuso $623 and stated that he is “ready, willing and will pay him on any day that he is willing to accept that amount.”
*128 Mr. Macaluso testified that Mr. Causey has made no tender of any amount. He stated that he has attempted to contact Mr. Causey by letter and by telephone on numerous occasions, to no avail. On April 1, 1980, Mr. Macaluso informed the clients in a terse note that since he had not yet received his share of the settlement from Mr. Cau-sey, the clients had two alternatives: file a complaint with the bar association or Mr. Macaluso would file suit against them for the fee. This communication incited the clients to file a complaint with the association.
Based on the evidence as summarized above, there has been no violation of a disciplinary rule. Initially, it should be noted that there is no evidence that Mr. Causey commingled or converted clients’ funds. In fact, the clients were paid promptly. The dispute is between two attorneys, neither one of whom was a client of the other. The major complaint[3] is that Mr. Causey was dilatory in paying his debt to Mr. Macaluso. Mr. Causey had approximately one month from the time the drafts cleared until the receipt of the January 24, 1980 letter from Mr. Macaluso in which Mr. Causey easily could have settled his debt with Mr. Maca-luso. Mr. Causey’s explanation that due to the holiday season and his belief that immediate payment was not required is not a sufficient justification for his failure to pay prior to January 24, 1980. Therefore, Mr. Causey was clearly wrong in not paying Mr. Macaluso before the receipt of this letter. But, the situation after this date is markedly different. The January 24 letter from Mr. Macaluso to Mr. Causey apparently attempted to abrogate the oral modification of the written fee agreement. After this letter, there was a bona fide dispute between the two attorneys over whether Mr. Macaluso was entitled to a $500 fee or approximately $3,000 as his one-half share of the one-third contingency fee. Mr. Cau-sey has always acknowledged that he owes Mr. Macaluso $500 plus $123 for costs; Mr. Macaluso maintains that he is entitled to approximately $3,000 plus $123 for costs.
A bar association disciplinary proceeding is an inappropriate action to enforce a civil liability. This proceeding is intended to ascertain whether there has been a willful violation of a disciplinary rule reflecting upon the attorney’s moral fitness to practice law. An attorney’s inexcusable failure to discharge a civil liability for one month does not constitute such a violation. In fact, in response to a question at oral argument before this court, counsel for the Committee was unable to specify exactly which disciplinary rule was violated. While we do not condone dilatory payment of a just debt, we find that a willful violation of a disciplinary rule reflecting upon Mr. Causey’s moral fitness to practice law has not been proven by clear and convincing evidence.
DECREE
Accordingly, this disciplinary proceeding against respondent, Ronald L. Causey, is dismissed.
DIXON, C.J., concurs.
LEMMON, J., concurs and assigns reasons.

 Bailes, J., sitting for Justice Marcus.

. Specification No. 1 has not been pursued.

. DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law. DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1)Funds reasonably sufficient to pay bank charges may be deposited therein.
(2)Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

. Due to the conflicting testimony, we are unable to find that Mr. Causey misrepresented the amount of the settlement at the time of the oral modification of the fee agreement. In fact, the refusal by Mr. Causey to have the drafts reissued in his name instead of in Mr. Macaluso’s name militates against a finding of misrepresentation.