BLANCHE, Justice.
All complaints of alleged unprofessional conduct are received and investigated by the Louisiana State Bar Association’s Committee on Professional Responsibility. Louisiana Bar Association Articles of Incorporation, art. 15, § 3. Having received a number of complaints against respondent, Alfred E. Mitchell, the committee launched an investigation. Pursuant to this investigation the Bar Association, acting through its Committee on Professional Responsibility, initiated disciplinary proceedings against Alfred E. Mitchell alleging 10 specifications of misconduct.
In accordance with article 15, § 3 of the Articles of Incorporation, the respondent was notified of these charges, and an adversary hearing was instituted. Respondent acted as his own attorney at this hearing. After receiving the evidence presented by both sides, the committee found the respondent guilty of. seven of the ten allegations of misconduct.
Acting on these findings the committee, in accordance with article 15, § 4(c) of the Bar Association’s Articles of Incorporation, filed a suit for disbarment against respondent in this court. The court appointed Alex W. Wall as a commissioner to take evidence and report his findings to this *586 court. Louisiana State Bar Association Articles of Incorporation, art. 15, § 6(b) and (d).
At the hearing conducted by the commissioner, the attorney for the bar association introduced, without objection, the entire record developed at the hearing which had been conducted by the Committee on Professional Responsibility. In addition to this evidence, Mr. Mitchell testified on his own behalf. After considering all the evidence, the commissioner filed his report wherein he set out his findings of fact and conclusions of law recommending that respondent be disbarred. The respondent, through counsel, has excepted to the findings of the commissioner. After briefing and argument in this Court, the matter has now come before us for a final decision.
The alleged acts of misconduct arise from respondent’s representation of four clients.
The Scioneaux Representation
Specifications numbers one and two relate to respondent’s representation of Mrs. Irene Scioneaux. The testimony at the hearing revealed'that the respondent settled Ms. Scioneaux’s case for a total of $14,916.75. Three drafts made out to Mrs. Scioneaux and Alfred E. Mitchell were issued by the settling defendant’s insurance company. The respondent had Mrs. Scion-eaux endorse these drafts on February 3, 1981, one day after he received them. The respondent testified that "... the drafts were cashed. I took mine that was agreed on out; gave the rest to my secretary ...” (committee transcript at p. 287). When asked what his secretary did with the money, he replied that “whatever monies I have, I give them to her and she put them in the safe. I can’t even get in the safe.” (committee transcript at p. 292). He maintained that he did not know how the money was kept in the safe because this was left entirely to his secretary. The secretary, who was Mr. Mitchell’s sister, did not confirm or deny the “safe” testimony.
In any event, the drafts were cashed and not deposited in a bank account as evidenced by the bank records introduced at the hearing. Mr. Mitchell was to use this money to pay the medical expenses, property damage (the note and mortgage which Mrs. Scioneaux had given to the State Bank & Trust Company for her now destroyed automobile had become due and payable), and to give the remaining money to Mrs. Scioneaux as her share of the damages. Mrs. Scioneaux testified that at the time the drafts were endorsed by her, Mitchell told her that the money would not be available for three weeks. She further testified that at the end of these three weeks she went to Mr. Mitchell and requested her money, but was told that the bank had not returned the checks. She reluctantly accepted this explanation, but later when she made another demand for her money — Mitchell confirmed her worst fears. “... He told me it was a family matter, that I wasn’t going to get anything out of it; it was a family matter, I’ll never forget that.” (Apparently a relative of Mrs. Scioneaux’s was the tortfeasor and Mitchell seized on this as a pretext for not paying.) (committee transcript at p. 102). The distraught Mrs. Scioneaux th"en called the insurance company that had issued the checks in order to verify Mr. Mitchell’s explanation. They told her that she had been paid and the checks had already cleared. Upon discovering this Mrs. Scion-eaux hired another attorney, Mr. Stanga, to help her collect.
Mr. Mitchell testified that he told Mrs. Scioneaux on several occasions to “come and get her money.” However, according to Mr. Mitchell, she steadfastly refused to accept her portion of the settlement.
Mr. Stanga testified that he made a written demand upon Mr. Mitchell for payment. On May 15, 1981, he received a statement of distribution in which Mr. Mitchell listed the following disbursements: attorney’s fees (50%), repayment of a loan (the property damage), and payment of certain bills. Attached to the statement was a photocopy of the checks drawn on the client trust account drawn on May 15, 1981. One of these checks, made out to Mrs. Scioneaux and her attorney, Mr. Stanga, for her por *587 tion of the settlement accompanied the statement. Therefore, the client was finally paid three and one-half months after endorsing the check. The client’s portion and the other debts associated with this case were paid only after legal demand was made upon Mr. Mitchell.
Out of the amount eventually paid Mrs. Scioneaux she had to pay her attorney a 40% contingency fee. Unhappy with her 60% of $1,988.48 out of a total settlement of $14,916.75, Mrs. Scioneaux sued Mr. Mitchell for the 50% fee he had retained and Mr. Mitchell settled for $8,000.00.
From the evidence adduced the commissioner found that the respondent violated Disciplinary Rule 1-102(A)(4) in that his conduct, if not dishonest, was deceitful and misrepresented the facts to his client. He also found that Mr. Mitchell violated Disciplinary Rules 9-102(A) and 9-102(B).
The Bar Association has the burden of establishing by clear and convincing evidence that respondent is guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Levy, 292 So.2d 492 (La.1974). In our review we will determine if the Bar Association has met this heavy burden and if the evidence supports the commissioner’s conclusions of law.
Disciplinary Rule 1-102(A)(4) states that “a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.” The commissioner found that respondent’s handling of Mrs. Scion-eaux’s settlement, “if not dishonest was deceitful and misrepresented the facts to his client, Mrs. Scioneaux.” There is ample evidence in the record to support a finding that Mitchell was deceitful and misrepresented facts. Mitchell cashed the checks immediately. However, when his client returned three weeks later he said the checks had not cleared. When she returned again, he told her she was not entitled to collect because the tort was committed by a member of her family. This proved to be a fabrication when the client contacted the insurance company. Clearly this evidence leads to a conclusion that respondent was attempting to appropriate his client’s money to his own use.
Mr. Mitchell denies this, but the committee and commissioner obviously felt that the client’s testimony and that of her attorney were more credible than Mitchell’s. We too find it hard to believe that a client would contact a second attorney to collect money from her original attorney if the first attorney had repeatedly offered her the money. Inconsistencies in Mitchell’s testimony further detract from his credibility. Reviewing the testimony, the respondent’s version of the facts is simply not credible. This conclusion is amply supported by the evidence.
Disciplinary Rule 9-102(A) states that:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
The respondent testified that he cashed the checks and retained the client’s portion. The disciplinary rule requires that a client’s funds be put into an identifiable bank account. By his own testimony he has failed to adhere to this standard. The evidence clearly supports this conclusion.
With regard to the alleged violation of Disciplinary Rule 9-102(B), that rule states that:
(B) A lawyer shall:
*588 (1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
The client testified that on at least three occasions she requested her money. The funds were not paid for three and one-half months. At one point the client was told she was not entitled to be paid. The client was not paid until after she hired a lawyer to make a demand on Mitchell, and after she had filed a complaint with the Bar Association. The client also was forced to sue Mitchell for charging excessive fees.
The rule requires that a client be paid promptly. The evidence overwhelmingly supports the conclusion that this rule was violated.
The Goines Representation
Specifications 4 and 5 developed out of Mr. Mitchell’s relationship with his client, Kelvin Goines. Respondent was retained by Mr. Goines in connection with an accident. On September 1, 1981, the respondent obtained a settlement in the amount of $6,000.00. The client’s portion of this check was to be $4,000.00. The client endorsed the check shortly after the settlement date. For over a period of two and one-half months the client repeatedly requested his portion.
The client testified that Mr. Mitchell used a variety of excuses for non-payment. The first time Mr. Goines requested payment Mitchell said that the check had not been cleared by the bank. Upon the second request the client was told that Mitchell’s secretary had the money. On yet another occasion, the client was told that he would be paid in a few days, but that Mitchell needed to borrow the money for “something.” The client testified that after five or six attempts to collect, he finally got tired of asking for the money and hired another attorney to collect for him.
The attorney retained by Mr. Goines to collect from respondent, Mr. Teddy Air-hart, Jr., testified that he sent a letter demanding Mitchell pay the client. Mr. Mitchell then wrote a letter to Mr. Airhart contending that the remaining portion was owed to Mitchell by Goines for past legal fees that had not been paid. Mitchell wrote that the fees were due for past representations of Goines in several criminal matters. Eventually Mr. Airhart brought suit against respondent on behalf of his client. The respondent defended this lawsuit answering that the client owed him for these alleged past representations. The trial was held on May 24, 1983. That tribunal gave judgment in favor of the client in the amount of $4,000.00, plus attorney’s fees, interests, and costs. To this date that judgment has not been paid and Mr. Goines is still without his money. At the hearing before the commissioner, the respondent maintained that Goines owed him the money. Mitchell did not explain why he has not paid the judgment rendered against him.
Mr. Mitchell’s secretary testified that there were no criminal files on Mr. Goines. She further testified that Goines had never been issued a bill of any sort. The respondent testified that the client knew how much he owed and that Mitchell felt no need to bill clients he saw all the time. Mr. Goines testified that he paid the respondent $200.00 for each representation. There were no receipts, no bills, and no files.
The commissioner found that Mitchell violated Disciplinary Rule 1-102 by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation. The commissioner also found that in relation to the *589 Goines representation he violated Rule 9-102 in that he failed to put his client’s funds in an identifiable account, and he has refused to pay his client the money owed.
Disciplinary Rule 1-102(A)(4) requires that a lawyer not engage in deceitful and dishonest behavior. There is ample evidence to support a conclusion that respondent failed to maintain this standard. He repeatedly gave the client different excuses for not paying the client his portion of the settlement. When faced by a legal demand the respondent came up with legal charges for which he had never before billed the client. These charges were made despite the fact that there were no records from which to substantiate them. The commissioner resolved the question of credibility in favor of the client, as had the committee and the trial court that rendered judgment against respondent in the civil suit. These facts lead to a conclusion that the respondent has appropriated his client’s money to his own use. This behavior certainly falls below the standard embodied in Disciplinary Rule 1-102(A)(4).
Disciplinary Rule 9-102(A) requires that a client’s funds be preserved separately in an identifiable account. The respondent testified that he unilaterally took the client’s money and paid it to himself under the subterfuge that it was for alleged past due fees. A trial court subsequently adjudged these alleged past fees non-existent. Despite this respondent still claims the money for himself and has not either paid the client or put the funds in a separate account. The evidence clearly supports the finding that respondent violated Rule 9-102(A) with respect to his representation of Kelvin Goines.
Disciplinary Rule 9-102(B)(4) requires a lawyer to promptly pay a client the money due him upon request. The respondent has not only refused to pay the client’s portion upon request, but he continues to refuse despite a judgment rendered against him in a civil suit. Therefore, the conclusion that the respondent has converted the client’s money to his own use is inescapable. He used and continues to use the money in violation of his duty to pay promptly.
The Jenkins Representation
Specifications 6 and 7 arise out of the representation by respondent of Jimmie Jenkins in a workmen’s compensation claim. Mr. Jenkins testified that he was hurt while working for the City of Baton Rouge on March 31, 1981. At that time, Mitchell took the case for a contingency fee of 30%.[1] The case settled for $7,500.00. Two weeks later the client came to Mitchell to request his share of the settlement. He was told at that time that, “This flood caused the wires to go out and the check didn’t clear ...” (committee transcript at p. 167). However, Mitchell gave him $2,000.00 at that time because he did not want the client to go back without anything. He told the client that he would get the rest of his money in a couple of days. A week later Mitchell, parceled out another $500.00. This $2,500.00 was all that the client has ever received of the $7,500.00 settlement.
When the Bar Association instituted proceedings against Mitchell, he claimed that the client owed him $3,500.00 for Mitchell’s representation of the client’s nephew. The nephew had been arrested a few weeks before the client was injured. The client paid Mitchell a total of $730.00 for this representation. The representation required only an “investigation” and one trip to the courthouse to talk to the judge. There was no trial.
Mitchell testified that Jenkins agreed to pay $3,500.00 out of the proceeds of the compensation case for the representation of the nephew. However, there is no record of the agreement. Further, when Jenkins signed a receipt for the $2,000.00 he received, the receipt made no mention *590 that this covered the $3,500.00 fee for the nephew. Apparently, the first time the client heard of the agreement was when Mitchell asserted its existence to the Bar Association'. However, Mitchell failed to satisfy the committee and the commissioner of the existence of this agreement'. The commissioner and committee resolved this question of credibility in favor of the client.
The commissioner concluded that the respondent violated Disciplinary Rules 1-102(A)(4) and 9-102(A) and (B)(4). Disciplinary Rule 1-102(A)(4) forbids an attorney from engaging in conduct that involves dishonesty, fraud, deceit and misrepresentation. The evidence supports a conclusion that there was never an agreement to pay Mitchell $3,500.00 for an already concluded representation that involved little work. This in turn leads to the conclusion that this fabricated agreement was a pretext for keeping the client’s portion of the money. This prior agreement was never asserted until the bar association began to investigate the respondent. These facts provide an inference that the respondent used and continues to use the client’s money. Taking a client’s money with the intention of keeping it is certainly conduct that involves dishonesty, fraud, deceit, and misrepresentations.
As for the alleged violation of Disciplinary Rule 9-102(A), Mitchell testified that he cashed the checks and kept the money. As stated infra, the rule requires that the client’s funds be placed in an identifiable bank account. By Mitchell’s own admission, this was not done. The evidence supports the finding that respondent violated Disciplinary Rule 9-102(A).
By failing to pay the money owed the client, respondent failed to follow Disciplinary Rule 9-102(B)(4). That rule requires that the client be promptly paid. Since the respondent has not to this day paid the client and good cause has not been shown for withholding payment, we conclude that he is wrongfully using the client’s money without permission or consent. The evidence supports the conclusion that the respondent has violated this standard as well.
The Grayer Representation
Specification 10 arises out of the representation of Betty Grayer. In July of 1983, Betty Grayer came to Mitchell with her financial problems. She told Mitchell that her creditors were hounding her and she was unable to pay her debts as they came due. Mitchell agreed that he would call the creditors in an attempt to get them to cease harassing Ms. Grayer and enter into some kind of a workout agreement. If an agreement with the creditors could not be reached, then Mitchell was to initiate bankruptcy proceedings. For this service, Mr. Mitchell was paid $1,000.00 in advance.
The creditors continued to dunn Ms. Grayer. When they would contact her, Ms. Grayer asked them if they had talked to her attorney. None of these creditors had ever heard of or from Mr. Mitchell.
Ms. Grayer testified that she went to Mr. Mitchell’s office several times in an attempt to see him. On more than one occasion the client waited in his office for several hours, but still was not able to see her attorney. Finally, matters came to a head when the client’s electricity was disconnected. She found respondent and demanded her money. Although he acknowledged that he owed her more, he would only offer the client enough money to pay her $211.00 electricity bill. She refused to take a partial payment and demanded an accounting. He told her that he did not have to return one penny, but promised that he would compute what he had earned and return the remaining portion to her. To this date the respondent has retained the earned and unearned portion and has not accounted for any of his services. The client was forced to pay another attorney $450.00 to accomplish the services which she had contracted Mitchell to perform.
In his defense, Mitchell claims that he did call some of her creditors. However, he was unable to document any time spent on the client’s case. He did not produce any witnesses to prove he had done any *591 work. He admitted that he had not earned the entire fee, but did not explain why he had not returned the unearned portion as he promised.
The commissioner concluded that the respondent had violated Disciplinary Rules 1-102, 7-101(A)(3), and 6-101(A)(3). The evidence supports a finding that he has engaged in conduct that involves dishonesty, fraud, deceit, and misrepresentation. He told the client he would represent her. He did nothing. He avoided the client when she sought to inquire into what he was doing. He later told her he would return money he admitted he owed her. He has never returned this money. We affirm the commissioner’s finding that the respondent violated Disciplinary Rule 1-102(A)(4).
Disciplinary Rule 7-101(A)(3) states that: “A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship ...” The evidence shows that a financially distraught client came to him. He took $1,000.00 from this client and did nothing to alleviate her problems. When she asked for a return of the money that she desperately needed to pay her bills, he told her she was not entitled to any of it, but that he would return some of it. He has never returned the money. His actions further prejudiced the client by forcing her to pay an additional $450.00 to do the work he would not do. The evidence supports a finding that the respondent prejudiced and damaged his client.
Disciplinary Rule 6-101(A)(3) dictates that: “A lawyer shall not neglect a legal matter entrusted to him.” From the evidence adduced at trial there is little doubt that the respondent neglected the matter of Ms. Grayer.
Conclusion
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice from lawyers who have demonstrated in their conduct that they are unable or likely to be unable to discharge their professional duties. Louisiana State Bar Association v. Levy, 400 So.2d 1355 (La.1981); Louisiana State Bar Association v. McSween, 347 So.2d 1118 (La.1977). The discipline to be imposed in each case will depend on the seriousness and circumstances of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Association v. Bensabat, 378 So.2d 380 (La.1979).
The picture that emerges is one of an attorney who preys on his clients, and appropriates their money to his own use. His modus operandi is clearly established. He puts off payment using a variety of excuses. When the clients take some action to obtain their money, he fabricates legal charges in order to keep the money. After a repetition of these events with several clients, an inference arises that the attorney is taking the money and putting it to his own use.
Mr. Mitchell’s clients came to him with their problems. Some of them were injured, some of them financially distraught, and some had run afoul of the law. His duty as an attorney was to help these clients for a reasonable fee. Instead he viewed their misfortunes as his good fortune. In each case he retained the portion of the money that was intended to redress his client’s injuries. In several cases, these clients had to go to other attorneys to solve the problems that Mr. Mitchell had created for them. Mr. Mitchell, instead of aiding his clients, created additional problems for them. He refuses to pay his clients even when they obtain judgments against him.
This court previously issued a public reprimand to Alfred Mitchell relating to similar conduct. Louisiana State Bar Association v. Mitchell, 375 So.2d 1350 (La.1979). Because of their professional stature, attorneys must adhere to a high standard of conduct in relations with their clients. Alfred Mitchell is unwilling or unable to *592 adhere to the standard of conduct expected of him.
Decree
For the reasons assigned, it is ordered, adjudged and decreed that Alfred Mitchell be, and is disbarred, effective this date, from the practice of law in Louisiana. Respondent is to pay all costs of these proceedings.

. We note that this fee is excessive. Louisiana Revised Statutes Title 23, Section 1141 provides that the fee in a workmen’s compensation action shall not exceed 20% of the first $10,-000.00.