DISCIPLINARY PROCEEDING
DIXON, Chief Justice.
The Louisiana State Bar Association instituted this proceeding against Clyde P. Martin, Jr. The Committee on Professional Responsibility, by registered letter dated January 13, 1987, sent respondent notice of six separate specifications of misconduct. The fourth specification alleged that respondent neglected and failed to record an act of sale at the proper mortgage conveyance office in violation of Disciplinary Rules 6-101(A)(3) and 1-102(A)(1). The remaining five specifications alleged neglect of legal matters and failure to return retained fees paid to respondent in violation of Disciplinary Rules 6-101(A)(3) and 2-110(A)(3).[1]
An investigative hearing was held on February 9, 1987, at which respondent appeared and represented himself. The committee by a majority vote found respondent guilty of violations of sufficient gravity to evidence a lack of moral fitness for the practice of law. Specifically, respondent was found guilty of conduct set forth in Specifications 1, 3, 5 and 6.
Respondent was notified by certified mail dated March 21, 1988 of three more separate specifications of misconduct. These *485 specifications alleged neglect of legal matters and failure to return retainer fees in violation of Disciplinary Rules 6-101(A)(3), 2-110(A)(3) and 1-102(A)(1) and (6), as well as the Rules of Professional Conduct, Rules 1.3, 1.4 and 8.4(g).[2]
Respondent was notified of a hearing before the committee on March 23, 1988. However, the hearing was continued until June 27, 1988, at respondent’s request. Respondent appeared and represented himself; the committee found him guilty of conduct set forth in all three specifications.[3]
Finally, respondent was notified by a letter dated September 28, 1988 of two final specifications of misconduct. The first involved neglect of a legal matter with failure to return a retainer; the second alleged failure to cooperate with the committee.
Another hearing was held on October 19, 1988 and again respondent represented himself. The committee found him guilty of conduct set forth in both specifications.
On February 22, 1989, respondent was served with a petition for disciplinary action, consolidating all of the specifications above; no response has been filed by Martin. Nathan Greenberg was appointed commissioner and a commissioner’s hearing was held on September 6, 1989; respondent, although duly notified, did not appear. The committee entered into evidence, without objection, the entire record of the earlier investigatory hearings and notified the commissioner of respondent’s prior disciplinary proceedings. Louisiana State Bar Association v. Martin, 451 So.2d 561 (La.1984).[4] On October 5, 1989, the commissioner filed his findings with this court and recommended, at minimum, a two year suspension. The committee filed a concurrence and opposition to the commissioner’s report, concurring in his findings of fact, but opposing the recommendation of a two year suspension. The committee contends that disbarment is the appropriate discipline to impose in this matter. Respondent did not except to the commissioner’s report, nor did he appear before this court. The matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).

February 9, 1987 Hearing

The commissioner found that, in Specification No. 1, respondent neglected *486 to appear in court on the day of' trial, resulting in a default judgment being taken against Mrs. Kennedy, the client.
The record discloses that a judgment of divorce was taken against Mrs. Kennedy in her absence, but no default judgment.
At the hearing only Mrs. Kennedy, Martin, and a laywer who had represented Mr. Kennedy testified. Mr. Kennedy filed for divorce in August of 1982; the petition suggested that Mrs. Kennedy be awarded custody of their sixteen year old son. Mrs. Kennedy, on September 7, 1982, filed an answer and reconventional demand, alleging that her husband maintained dual residences, one with her and one with another woman at another place. She declined the offer of custody of the son and prayed for alimony and divorce. There was a judgment on November 8, 1982, enjoining the parties from disposing of the community, awarding custody of the boy to Mr. Kennedy, awarding Mrs. Kennedy the use of the family home until the disposition of the community in lieu of alimony, and ordering Mr. Kennedy to pay the house notes and insurance and remove himself from the home immediately. (Mrs. Kennedy was still living in the house at the time of the 1987 hearing).
Mr. Kennedy’s lawyer testified that the matter was delayed so that Mr. Kennedy could vacate the community home. Actually, nothing happened in the litigation until a motion was filed on April 25, 1984 on behalf of Mr. Kennedy to fix the matter for trial on June 8, 1984. On that day Mr. Kennedy was awarded a divorce. Nothing in the record shows that either Martin or Mrs. Kennedy was served with a notice of trial. There is no testimony that anyone attempted to notify Martin or Mrs. Kennedy until the day of trial, when the judge ordered Mr. Kennedy’s lawyers to notify Martin. Mr. Kennedy’s lawyer testified: “... it was sort of a situation where when we filed it in ’82 we agreed to not do anything, to wait over a period of time so that the man lived separate and apart from the lady ...” Mr. Kennedy’s lawyer did not testify about any effort to notify Martin of the trial date of June 8, 1984. Martin testified he was out of town on that date and learned of the call from his secretary on June 9. There is no evidence to the contrary. Martin testified that he later advised Mrs. Kennedy that there was nothing to be gained by doing anything further at that time. Her right to alimony and property had been reserved and Mr. Kennedy had custody of the “problem child.” There is no evidence to support Specification No. 1, and it is dismissed.
-Specification No. 3: The evidence establishes that Carolyn Hamilton paid respondent $200 to prepare and file Chapter 13 bankruptcy proceedings. It was her understanding that no work would be done until a balance of $250 was paid. Hamilton completed payment on February 22, 1985, but the bankruptcy was not filed until July 26, 1985, three days after complaint had been received by the bar association. No reason for the delay has been given. Respondent violated Disciplinary Rule 6-101(A)(3).
Specification No. 5: It is clear from the evidence that Enid Grant completed payment of a $500 retainer fee to respondent on March 11, 1986 to amend visitation rights and increase child support payments. Respondent has not provided Grant with legal services nor has he returned her retainer, in violation of Disciplinary Rules 6-101(A)(3), 2-110(A)(3) and 1-102(A)(1). He claims that he made an initial investigation, but was told by the client to “hold off” because things had “simmered down.” The client denied that allegation and made written demand for the return of the fee on September 9, 1986, to which Martin had not responded at the time of the hearing.
Specification No. 6: Evidence presented establishes that respondent received $392.50 from Pearly Smith as a retainer in a divorce matter for which he has failed to provide any services. Respondent has also failed to return the retainer, in violation of Disciplinary Rules 6-101(A)(3), 2-110(A)(3) and 1-102(A)(1) and (6); he offered no explanation at the hearing.

Hearing of June 27, 1988

Specification No. 1: The evidence fails to establish that respondent neglected *487 legal matters in violation of Disciplinary Rule 6-101(A)(3). James Robinson was represented by Martin from 1981 to 1986 or 1987 on family matters involving a former wife, a son with mental problems and a house with construction defects. Robinson alleged that Martin failed to file a motion for reduction of alimony. Robinson’s testimony established that he was never current with alimony payments and would not comply with a plan Martin worked out to pay arrearages in installments and stay current as alimony came due. Martin advised him that he should not attempt a reduction without proof of changed circumstances. In light of these facts, it is not clear that respondent neglected legal matters by failing to file a motion for reduction in alimony. This specification is dismissed.
Specification No. 3: Respondent was retained in an expropriation matter. Mrs. Marion Graham stated that the expropriation occurred in 1965 and that she contacted respondent in 1985 in an effort to recover a portion of the expropriated property not used by the state. Mrs. Graham’s husband had recently died, and a portion of his interest in the property passed to their children. Respondent drafted four deeds in an attempt to convey their interests back to Mrs. Graham. About this time, respondent conducted research and discovered that the state had sold the property in question to a third party. At this point, respondent claims that he informed Mrs. Graham that an additional $1500 retainer was necessary to continue his efforts. Mrs. Graham denies any such agreement. Because of the complexity of this matter and the likelihood of its outcome in favor of the state, respondent’s claim that an additional retainer was requested is as plausible as Mrs. Graham’s assertion that no such agreement was reached. The bar association has failed to carry its burden in this specification. It is dismissed.

Hearing of October 19, 1988

Evidence at this hearing supports all allegations by Bernice Dorch, establishing that respondent violated Disciplinary Rules 6-101(A)(3), 2-110(A)(3) and 1-102(A)(1) and the Rules of Professional Conduct 1.3, 1.4 and 8.4.
“The purpose of disciplinary proceedings against an attorney is not so much to punish the particular attorney as to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice. Louisiana State Bar Association v. Mitchell, 481 So.2d 583 (La.1986). The specific discipline imposed in a particular case depends upon the seriousness of the misconduct and the circumstances of the pífense, viewed in the light of the purpose of such proceedings and in consideration of the aggravating and mitigating circumstances. LSBA v. Mitchell, supra ...” Louisiana State Bar Association v. Carpenter, 502 So.2d 1023, 1026 (La.1987).
Respondent is guilty of four separate incidents of misconduct involving Carolyn Hamilton; Enid Grant, Pearly Smith and Bernice Dorch. Disciplinary Rules 6-101(A)(3), 2-110(A)(3) and 1-102(A)(1). Respondent has also violated the Rules of Professional Conduct, 1.3 and 1.4, as well as four separate violations of 8.4(g) for failure to cooperate with the committee. There are few, if any, mitigating, circumstances in this matter.
In consideration of the aggravating factor of respondent’s prior disciplinary proceedings, it is ordered that Clyde P. Martin, Jr. be suspended from the practice of law for three years from the date of the finality of this judgment, with his readmission conditioned upon the refund of the $500, $392.50 and $600 fees paid by Enid Grant, Pearly Smith and Bernice Dorch, respectively. Respondent is ordered to pay all costs of these proceedings.

. "DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
"DR 2-110 Withdrawal from Employment.
(A) In general.
(1)If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.
(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.”
"DR 6-101 Failing to Act Competently.
(A) A lawyer shall not:
(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
(2) handle a legal matter without preparation adequate in the circumstances.
(3) Neglect a legal matter entrusted to him."

."Rule 1.3. Diligence
A lawyer shall act with reasonable diligence and promptness in representing a client.
Rule 1.4. Communication
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.”
"Rule 8.4. Misconduct
It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) Commit a criminal act especially one that reflects adversely on the lawyer’s honesty, trustworthiness or fitness as a lawyer in other respects;
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice;
(e) State or imply an ability to influence improperly a judge, judicial officer, governmental agency or official;
(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable Rules of Judicial Conduct or other law; or
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
(h) Present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

. Martin received a six month suspension on allegations of misconduct similar to those now before this court.